[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13616

_____

ANTHONY MUNGIN,

                                        Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL,

                                        Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:06-cv-00650-BJD-JBT

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

In 1993, Anthony Mungin was convicted of murdering Betty Jean Woods and sentenced to death. For thirty years, Mungin has argued that his lawyer was ineffective in the guilt phase of his trial. We must resolve four such ineffective assistance of counsel claims in this appeal. Two were timely raised in Mungin's initial federal habeas petition, and two were not. We conclude that the first two ineffective assistance of counsel claims fail under *Strickland v. Washington*, 466 U.S. 668 (1984), and our habeas caselaw. We conclude that the last two claims cannot be litigated in federal court because they do not relate back to Mungin's initial habeas petition and are therefore barred by the statute of limitations. In doing so, we correct our precedent on the standard of review that applies to a district court's ruling on relation back under Federal Rule of Civil Procedure 15(c). Specifically, under *Krupski v. Costa Crociere S.p.A*, 560 U.S. 538 (2010), we review those decisions *de novo*. Because the district court did not err in denying Mungin's petition for a writ of habeas corpus, we affirm.

## I.

### A.

We will begin with the facts of the crime and the guilt phase of trial. The State of Florida charged Anthony Mungin with first-

degree murder. The State alleged that Mungin had shot and killed a store clerk, Betty Jean Woods, in the head while robbing the Jacksonville convenience store where she worked. The State's theory was that Mungin had committed a string of robberies and related shootings in the area, which culminated in the murder of Woods.

Mungin was represented by two experienced attorneys at trial. Charles Cofer was Mungin's lead defense counsel and handled the investigation, decision-making, and cross-examination of the primary witnesses. Another attorney, Lewis Buzzell, entered the case much later as second chair and presented the closing argument.

The State introduced two key pieces of evidence: forensic analysis of guns and bullet casings and an eyewitness who saw Mungin at the crime scene.

As for the forensic evidence, law enforcement officers found a gun at Mungin's residence and matched that gun to the bullets used to commit the murder and similar robberies. They also found a stolen car—a Dodge Monaco—about one hundred yards from the house. Officers found two expended shell casings inside that car that also matched to the gun that shot Woods. Unbeknownst to the jury, however, Deputy Malcolm Gillette, one of the law enforcement officers investigating the murder, stated on an inventory and vehicle storage receipt that there was "nothing visible" in the car. *Mungin v. State* (*Mungin VI*), 320 So. 3d 624, 625 (Fla. 2020).

As for the eyewitness testimony, Ronald Kirkland testified at trial that he arrived at the convenience store shortly after the

shooting and physically bumped into a man who was leaving the convenience store. Kirkland then found the victim on the floor. Kirkland identified the man he bumped into as Mungin in a photo lineup and in court at trial. A police officer, Detective Christie Conn, conducted the photo lineup. When she showed Kirkland six or seven photographs including Mungin's, Kirkland told Detective Conn that, based on the photograph he was shown, he could not swear Mungin was the individual leaving the store. But he nonetheless correctly identified Mungin's photograph and signed it. Detective Conn later testified about Kirkland's hesitancy in a deposition, but she was not called to impeach his testimony at trial.

There was another potential eyewitness at the scene—George Brown—who did not testify at trial. Detective Conn testified during her deposition that Brown told Detective Conn that he had arrived on the scene after Kirkland. Cofer, Mungin's lead attorney, tried to serve a subpoena on Brown to depose him; but Cofer could not find Brown at the address the government had given Cofer. Ultimately, Cofer could not find Brown to either confirm or rebut Detective Conn's recollection of his statement.

Nonetheless, Cofer extensively cross-examined Kirkland at trial. On cross-examination, Kirkland conceded that he only caught a glimpse of the man who was leaving the store and noticed nothing about the man's clothes. Cofer also prompted Kirkland to admit to inconsistencies between his previous statements to police and his testimony, such as his statements about the height, age, and appearance of the man he saw leaving the store. Specifically, Cofer

prompted Kirkland to state that he could not remember saying the man was five-foot-five before and that the man was somewhere in the area of 20 or 30 even though he had previously stated that the man was between 27 and 30. And Kirkland acknowledged that he had originally described the man at the scene as having a Jheri curl and a slight beard, despite Mungin's short-haired, clean-shaven appearance at the time. Kirkland also conceded that three people in the photo array had drawn his attention at first and that he had looked at the photos for fifteen or twenty minutes before identifying Mungin. When examined about his apparent statement to Detective Conn that he could not swear in court that the picture he selected was the man who bumped into him, Kirkland said he did not recall making such a statement.

Although Kirkland was on probation for misdemeanor charges of issuing worthless checks in the leadup to the trial, no one mentioned it during his cross-examination. The probation office issued violation-of-probation warrants against Kirkland two weeks before Mungin's trial, but it is not clear that Mungin's counsel or the prosecution were made aware of that fact. And, like the probation itself, no one mentioned these warrants at trial. These warrants were later recalled—that is, withdrawn—nearly three weeks after Mungin's trial.

Deputy Gillette testified at trial that he saw spent shell casings in the stolen Dodge Monaco near Mungin's house. Mungin's counsel did not know that Deputy Gillette had written that he saw nothing visible in the car on the inventory form. Years later,

Deputy Gillette recanted this testimony in an affidavit; he now says that he did not see shell casings in the car and that he had not reviewed his paperwork before testifying at trial. *See id.*

Florida law at the time of Mungin's trial allowed defense counsel to make a "sandwich" closing argument—addressing the jury first and last—in cases in which the defendant presented no evidence except his or her own testimony. *See* Fla. R. Crim. P. 3.250 (1993); *see also In re Amends. to the Fla. Rules of Crim. Proc.*, 606 So. 2d 227, 312 (Fla. 1992) (Appx. 1); *Boyd v. State*, 200 So. 3d 685, 705 (Fla. 2015). To benefit from this rule, Mungin's counsel decided to not call defense witnesses, including Detective Conn. Mungin's counsel ultimately waived the initial closing argument—forcing the prosecution to guess at Mungin's closing argument rather than directly rebut it—and presented unrebutted closing arguments with the last word in front of the jury.

After deliberating, the jury convicted Mungin of first-degree murder. On the jury's recommendation, a judge sentenced Mungin to death after finding the aggravating factors (1) that Mungin had committed a prior violent felony and (2) that the murder was committed during a robbery or attempted robbery and that the murder was committed for pecuniary gain. *See Mungin v. State* (*Mungin I*), 689 So. 2d 1026, 1028 & n.3 (Fla. 1995). Mungin's conviction and sentence were affirmed on direct appeal, *see id.* at 1028, and the U.S. Supreme Court denied his petition for a writ of certiorari on direct review on October 6, 1997, *see Mungin v. Florida*, 522 U.S. 833, 833 (1997).

### B.

On September 17, 1998, Mungin filed his first state postconviction relief motion. On postconviction review, Mungin raised several claims of ineffective assistance of counsel in state court. The state circuit judge held an evidentiary hearing, during which Cofer—who had become a Florida circuit court judge by this time—testified about his experience and his decisions at Mungin's trial. Cofer had handled many homicide trials as an assistant public defender by the time of Mungin's trial, handling his first one around ten years before Mungin's trial.

Cofer explained that he knew about Kirkland's probation on misdemeanor charges of issuing worthless checks but that it was scheduled to end two weeks before Mungin's trial and that he knew Kirkland had successfully completed probation in the past. And he explained that he did not know that that violation-of-probation warrants had been issued against Kirkland two weeks before Mungin's trial. Cofer acknowledged that he could have impeached Kirkland about the probation if he were on probation at the time of trial and stated that he would have looked into that had he known about the violation warrants.

Cofer also explained that he did not call Detective Conn to impeach Kirkland about his identification of Mungin because he thought this testimony would be largely redundant and would also be a worse trial strategy. Cofer thought that most of Detective Conn's testimony would be redundant to what Kirkland would say on the stand and that the additional information—that Kirkland

said he could not swear in court that Mungin was the individual he saw leaving the store after the shooting—was not important enough to justify giving up the "sandwich" closing argument.

Mungin's counsel also explained why he did not call George Brown to testify. Cofer attempted to serve a deposition subpoena on Brown and could not find him at the address the government provided. Moreover, Cofer testified that he decided not to call Brown after he determined that Brown was not a critical witness. Cofer said that he made this determination based in part on Detective Conn's deposition testimony; he understood that Brown told Detective Conn that he had arrived on the scene after Kirkland and did not notice anyone leaving as he entered the store. In short, Cofer explained that he could not find Brown and that he thought Brown's testimony would not add any value that could not come from Kirkland's testimony.

At the end of years of state court litigation, the Florida Supreme Court denied Mungin's initial state postconviction relief motion with its mandate issuing on June 29, 2006. *See Mungin v. State* (*Mungin II*), 932 So. 2d 986, 1004 (Fla. 2006).

## C.

Mungin filed a federal habeas petition on July 18, 2006. Claim I in his original habeas petition was that "Mr. Mungin Received Ineffective Assistance of Counsel at the Guilt Phase of his Capital Trial, in Violation of the Sixth Amendment to the United States Constitution." Dist. Ct. Doc. 1-2 at 28. Although styled in the original petition as a single claim, Claim I makes several different

*Strickland* claims about trial errors. Mungin has been litigating back and forth between state and federal court since then, culminating in us granting a certificate of appealability on four of his *Strickland* claims. We will trace the path of those four claims through Mungin's state and federal postconviction proceedings.

1.

In his original habeas petition, Mungin claimed that his counsel was ineffective for failing to adequately impeach Ronald Kirkland at trial with evidence related to his criminal record. During his state postconviction relief review process, the Florida Supreme Court rejected this claim. *See Mungin II*, 932 So. 2d at 998–99. In doing so, the Florida Supreme Court split this claim into two subparts: that Mungin's counsel should have (1) raised Kirkland's probation status on cross-examination and (2) informed the jury about the recalled warrants. The Florida Supreme Court reasoned that (1) assuming deficient performance, Mungin was not prejudiced by his counsel's failure to raise Kirkland's probationary status and (2) Mungin's counsel was not deficient for failing to inform the jury about Kirkland's recalled warrants because the warrants were not recalled until after the trial. *See id.* The federal district court denied Mungin relief on this claim on the merits.

2.

In his original habeas petition, Mungin claimed that his counsel was ineffective for failing to elicit favorable testimony at trial from Detective Christie Conn. The Florida Supreme Court

rejected this claim on the merits after concluding that Mungin had failed to establish a constitutional violation. *See id.* at 999. The district court denied Mungin relief on the merits.

3.

Mungin's original federal habeas petition did not mention George Brown. On August 16, 2007, Mungin filed a successive motion to vacate his conviction and sentence in state court based on recently discovered information in the form of an affidavit executed by George Brown on June 30, 2007. The district court stayed Mungin's federal habeas proceedings for Mungin to exhaust this claim, among others, in state court. A state postconviction court ruled against Mungin on these claims, concluding that—with respect to an ineffective assistance of counsel claim—the Brown-related affidavit was not sufficiently likely to change the result at trial. Although it did not discuss the *Strickland* claim, the Florida Supreme Court reversed and remanded for an evidentiary hearing on whether the government's failure to disclose information about Brown violated *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972). *See generally Mungin v. State* (*Mungin III*), 79 So. 3d 726 (Fla. 2011). The state court held the evidentiary hearing and again denied Mungin's petition. The Florida Supreme Court affirmed the decision and again did not explicitly discuss the Brown-related ineffective assistance of counsel claim. *See generally Mungin v. State* (*Mungin IV*), 141 So. 3d 138 (Fla. 2013). The mandate for this ruling issued on August 16, 2013.

On August 18, 2014—over a year later—Mungin asked the district court to end the stay, reopen the federal case, and supplement his habeas petition with the Brown-related ineffective assistance of counsel claim. The federal district court reopened the case on August 28, 2014, and Mungin moved to amend his federal habeas petition to add the Brown-related ineffective assistance of counsel claim. The State objected to the amendment on the ground that "any attempt to raise an IAC claim now in federal court, almost a decade after the state conviction became final and over seven years after Mungin's [first] amended federal habeas petition would egregiously violate the letter and purpose of the AEDPA's one-year statute of limitations." Dist. Ct. Doc. 31 at 81 (citation omitted). The district court nonetheless allowed the amendment but denied the claim on the merits and as procedurally defaulted.

4.

Mungin's original federal habeas petition did not mention Deputy Gillette except in the context of Deputy Gillette's penalty phase testimony. In 2015, ten months after Mungin moved to amend his habeas petition with the Brown-related claim, the district court again stayed the case so that Mungin could litigate additional claims in state court. Those additional claims are not at issue in this appeal. But, while Mungin was litigating those additional claims in state court, he filed more postconviction motions in state court, including one filed on September 25, 2017, claiming ineffective assistance of counsel related to a new affidavit from Deputy

Gillette. The new Deputy Gillette affidavit was executed on September 24, 2016—over one year earlier. *See Mungin VI*, 320 So. 3d at 625. Specifically, Mungin argued that his trial counsel provided ineffective assistance by failing to cross-examine Deputy Gillette about an inconsistency between his trial testimony that he saw shell casings in the stolen Dodge Monaco found in a parking lot near Mungin's house and the "inventory and vehicle storage receipt" in which he made a notation indicating that he saw "nothing visible" in the car. *Id.* In his 2016 affidavit, Deputy Gillette recanted his trial testimony about seeing the shell casings in the car. *See id.* The Florida Supreme Court denied Mungin's new Deputy Gillette-related claims as untimely. *See id.* at 626.

In 2022, the district court reopened the case for a final time, and Mungin moved to amend his second amended petition to add the Deputy Gillette-related claims. The district court denied Mungin leave to amend to add his Deputy Gillette-related ineffective assistance of counsel claim as futile in light of the statute of limitations.

\* \* \*

In August 2022, over sixteen years after Mungin filed his original habeas petition, the district court denied Mungin's petition and dismissed the action with prejudice. We granted a certificate of appealability on the claims discussed above.

## II.

We must address four of Mungin's claims. He argues (1) that his counsel was ineffective for failing to adequately impeach Ronald Kirkland with evidence of his probationary status and (2) that his counsel should have called Detective Conn to testify about Kirkland's prior equivocating statement about the strength of his identification. He also argues (3) that his counsel should have presented George Brown's testimony and (4) that the district court should have allowed him to amend his petition to add an ineffective assistance of counsel claim about Deputy Gillette's recanted testimony. We will conclude that the first two claims fail on the merits and that the last two claims fail under the statute of limitations.

### A.

We turn first to Mungin's related claims about his counsel's failure to impeach Kirkland's testimony with evidence of his probationary status and his equivocating statement to Detective Conn. "We review *de novo* the denial of a petition for a writ of habeas corpus." *Sears v. Warden GDCP*, 73 F.4th 1269, 1279 (11th Cir. 2023) (emphasis added) (quoting *Morrow v. Warden, Ga. Diagnostic Prison*, 886 F.3d 1138, 1146 (11th Cir. 2018)). Moreover, "[a]n ineffective assistance of counsel claim is a mixed question of law and fact[,] which we review *de novo*." *Williams v. Alabama*, 73 F.4th 900, 905 (11th Cir. 2023) (quoting *Sims v. Singletary*, 155 F.3d 1297, 1304 (11th Cir. 1998)).

Because these claims were adjudicated in state court, we may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court's merits-based "adjudication of the claim . . . resulted in a decision that was" (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "An unreasonable application occurs when a state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of [the] petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks omitted) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). "That is, 'the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable.'" *Id.* (alterations in original) (quoting *Wiggins*, 539 U.S. at 520–21). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "The prisoner must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness' 'under prevailing professional norms.'" *Rompilla*, 545 U.S. at 380 (citations

omitted) (first quoting *Strickland*, 466 U.S. at 688; and then quoting *Strickland*, 466 U.S. at 688; *Wiggins*, 539 U.S. at 521). Notably, the Supreme Court has "recognized the special importance of the AEDPA framework in cases involving *Strickland* claims." *Shinn*, 592 U.S. at 118. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner]—that there was no 'substantial likelihood' of a different result—was 'so obviously wrong that its error lies beyond any possibility for fairminded disagreement.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (en banc) (quoting *Shinn*, 592 U.S. at 118–21). Establishing deficient performance under *Strickland* has this same high bar under AEDPA deference.

"On each claimed basis for relief, we review 'the last state-court adjudication on the merits.'" *Sears*, 73 F.4th at 1280 (quoting *Greene v. Fisher*, 565 U.S. 34, 40 (2011)). We apply these standards to Mungin's first two ineffective assistance of counsel claims.

1.

Mungin argues that his counsel was ineffective for failing to impeach Ronald Kirkland with facts surrounding his probation and probation violation warrants. Cofer's files suggest that he knew that Kirkland had been arrested on misdemeanor charges involving

worthless checks, and a judge had withheld an adjudication of guilt pending Kirkland serving 90 days' probation. The probation office issued violation-of-probation warrants against Kirkland two weeks before Mungin's trial. For reasons that are not clear on the record, these warrants were recalled shortly after the trial.

The Florida Supreme Court rejected this claim by splitting this claim into two actions by counsel with different holdings. *See Mungin II*, 932 So. 2d at 998–99. Neither holding is unreasonable.

First, the Florida Supreme Court held that, assuming deficient performance, Mungin was not prejudiced by his counsel's failure to cross-examine Kirkland on his probationary status or pending warrants for violating probation. *See id.* The Florida Supreme Court recognized that Mungin's counsel already attacked Kirkland's identification of Mungin on cross-examination and "argued extensively that . . . Kirkland's identification could not be believed beyond a reasonable doubt." *Id.* Therefore, the court reasoned that the additional impeachment evidence of Kirkland's probationary status would not have changed the outcome of the trial.

We cannot say the Florida Supreme Court unreasonably determined the facts or unreasonably applied U.S. Supreme Court caselaw. On this subpart of the claim, Mungin cannot establish that "the state court's conclusion that [counsel's] performance . . . didn't prejudice him—that there was no 'substantial likelihood' of a different result—was 'so obviously wrong that its error lies beyond any possibility for fairminded disagreement.'" *Pye*, 50 F.4th at 1041–42 (quoting *Shinn*, 592 U.S. at 118–21). Nothing about

Kirkland's probationary status is particularly compelling to undermine his identification of Mungin as the person he saw leaving the convenience store where the murder took place.[1] And, as the Florida Supreme Court noted, Cofer extensively challenged Kirkland's identification testimony in other ways. Because the Florida Supreme Court needed to hold only that Mungin fails one element of *Strickland* for him to lose on this part of this claim and because we agree that the Florida Supreme Court's determination was not unreasonable, we need not examine the other *Strickland* element of this subpart of this claim.

Second, the Florida Supreme Court held that Mungin's counsel was not deficient for failing to inform the jury about Kirkland's recalled warrants because the warrants were not recalled until after the trial. *See Mungin II*, 932 So. 2d at 999. That warrants were recalled after trial could theoretically suggest Kirkland had a deal with the government to recall the warrants in exchange for his testimony. But the state court found that Kirkland "did not have any deals with the State in exchange for his testimony at Mungin's trial," and Mungin does not argue otherwise. *Id*. Given the absence of any deal between Kirkland and the government to recall his warrants after his testimony, we cannot say the state court was unreasonable in concluding that his counsel was not deficient for failing

---

[1] Because the judge in Kirkland's case withheld an adjudication of guilt pending probation, it appears that Kirkland was never convicted of passing worthless checks. Mungin has not argued, and we do not address, whether Kirkland should have been impeached for passing worthless checks apart from his probationary status. *See* Fla. Stat. § 90.610.

to raise the recalled warrants at trial. Therefore, the Florida Supreme Court was not unreasonable in denying Mungin's Kirkland-related warrant argument on the ground that he failed to establish deficient performance.

Because the Florida Supreme Court was not unreasonable in resolving both the Kirkland probation and warrant issues, the district court properly denied Mungin's Kirkland-related ineffective assistance of counsel claim.

2.

Turning to Mungin's second, but related, ineffective assistance claim, Mungin argues that his counsel was ineffective for failing to call Detective Conn to the stand to impeach Kirkland's statement that he did not remember saying that he could not swear to his identification during the photo lineup. The Florida Supreme Court rejected this claim on the merits. After identifying the reasons that Mungin's counsel had exercised his strategic judgment not to call Detective Conn, the Court concluded that, even assuming deficient performance, Mungin failed to establish *Strickland*'s prejudice element. *See id.*

For our part, we will begin and end with the prejudice element of *Strickland*. Again, we cannot say the Florida Supreme Court unreasonably applied the law or unreasonably determined the facts in denying Mungin relief for his Detective Conn-related claim. This is so for two reasons.

First, Kirkland identified Mungin at two points in time. He initially identified Mungin's photograph and signed it during the police's murder investigation. Kirkland then identified Mungin again in person during Mungin's trial. Thus, even if Kirkland told Detective Conn that, based on the photograph he was shown, he could not swear Mungin was the individual leaving the store, we cannot say that impeaching Kirkland on this point would have undermined his additional in-court identification to the point that it would have affected the result of the trial.

Second, Mungin's counsel vigorously (and successfully) cross-examined Kirkland on the strength of his identification in other ways. For example, Cofer got Kirkland to admit that he only caught a glimpse of the man who bumped into him and did not notice anything about the man's clothes. Cofer also prompted Kirkland to state that he could not remember saying the man was five-foot-five before and that the man was somewhere in the area of 20 or 30 years old, even though he had previously stated that the man was between 27 and 30 years old. And, in response to Cofer's questioning, Kirkland acknowledged that he had originally described the man at the scene as having a Jheri curl and a slight beard, despite Mungin's short-haired, clean-shaven appearance at the time. Additionally, Cofer prompted Kirkland to admit that three people in the photo array had drawn his attention at first and that he had looked at the photos for fifteen or twenty minutes. Because Cofer performed such significant cross-examination of Kirkland's identification of Mungin, the state court was not unreasonable in

concluding that additional cross-examination through impeachment evidence would not have changed the outcome of Mungin's trial.

The state supreme court was not unreasonable in rejecting this claim. Because the state supreme court did not unreasonably apply the law or unreasonably determine the facts, the district court properly denied Mungin's Detective Conn-related ineffective assistance of counsel claim.

*B.*

We turn now to Mungin's final two claims: (1) that his counsel should have presented the testimony of George Brown and (2) that the district court should have allowed him to amend his petition to add a claim about Deputy Gillette's recanted testimony. Unlike the first two claims, which were raised in Mungin's initial habeas petition, he did not raise these two claims until his federal habeas litigation had been pending for many years.

We conclude that these claims fail under the statute of limitations. Even giving Mungin the benefit of the doubt about when the statute began to run, the claims were filed outside the one-year statute of limitations. And we cannot say these claims relate back to his original petition.

*1.*

For starters, Mungin does not dispute that both the Brown and Gillette claims are barred by the statute of limitations unless they relate back to Mungin's initial, timely filed habeas petition.

AEDPA's one-year statute of limitations clock starts running at the latest of several dates. *See* 28 U.S.C. § 2244(d)(1). There was no state impediment to bringing either of these claims, *see id.* § 2244(d)(1)(B), and there were no new constitutional rights at issue, *see id.* § 2244(d)(1)(C). Therefore, the only two dates relevant here are the finality of the state court conviction, *see id.* § 2244(d)(1)(A), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," *id.* § 2244(d)(1)(D).

There's no question that these claims were first brought in federal court long after Mungin's conviction was final in state court. Mungin first brought the Brown claim in federal court in 2014 and first brought the Deputy Gillette-related claim in federal court in 2022, but his conviction was final in state court when the U.S. Supreme Court denied his petition for a writ of certiorari on direct review on October 6, 1997. *See Mungin v. Florida*, 522 U.S. 833, 833 (1997) (denying petition for a writ of certiorari); *see also Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)). Mungin's statute of limitations began running for purposes of Section 2244(d)(1)(A) on this date. On September 17, 1998, Mungin filed his first state postconviction relief motion, which tolled the statute of limitations after it had run for 346 days. *See* 28 U.S.C. § 2244(d)(2). The clock began running again on June 29, 2006, when the Florida Supreme Court denied Mungin's initial state postconviction relief motion. *See Lawrence v. Florida*, 549 U.S. 327, 329, 333–34 (2007). No one disputes that Mungin's initial federal habeas petition was filed 19 days later

on the final day possible, July 18, 2006. Given that Mungin filed his Brown and Deputy Gillette claims in state court at least one day after July 18, 2006—and in fact did so much later—the statute of limitations ran on all claims not brought in the initial federal habeas petition as far as Section 2244(d)(1)(A) is concerned.

Mungin also cannot benefit from couching his claims as based on newly discovered evidence under Section 2244(d)(1)(D). Giving Mungin the benefit of the doubt, we will assume that Mungin could not have discovered Brown's allegations until he executed his affidavit on June 30, 2007—so his one-year clock started to run on that date. Mungin waited over a month to file his successive state motion for postconviction relief on August 16, 2007. That filing tolled his one-year clock. *See* 28 U.S.C. § 2244(d)(2). The Florida Supreme Court denied relief on this claim when its mandate issued on August 16, 2013—so the clock started running again. *See Lawrence*, 549 U.S. at 329, 333–34. But Mungin waited until August 18, 2014—over a year later—to ask the district court to end the stay, reopen the federal case, and supplement his habeas petition with the Brown-related ineffective assistance of counsel claim. The State objected to the 2014 Brown amendment on AEDPA statute of limitations grounds. When we exclude the time this claim was in state court, we see that Mungin waited approximately thirteen months and one week after his one-year AEDPA statute of limitations clock began running on this claim. Therefore, even giving Mungin the benefit of the doubt, the Brown claim was untimely.

The Deputy Gillette claim is even more clearly untimely. Deputy Gillette signed his affidavit on September 24, 2016, but Mungin did not file his third successive postconviction motion in state court on this issue until more than a year later on September 25, 2017. *See Mungin VI*, 320 So. 3d at 625. And, after the Florida Supreme Court ruled on this issue in 2020, he did not try to amend his federal habeas petition until 2022. So, even assuming Mungin could not have discovered this claim with the exercise of due diligence until Deputy Gillette signed his affidavit, Mungin still waited too long to bring this claim.

2.

Because both claims were added in federal court after the statute of limitations had run, the key question is whether either claim relates back to Mungin's original habeas petition. "Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (citing *McCurdy v. United States*, 264 U.S. 484, 487 (1924); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993)). In the habeas context, relation back is allowed when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A new claim does not relate back simply "because both the original petition and the amended pleading arose from the same trial and conviction." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

The district court allowed amendment to add the Brown claim under relation back principles but disallowed amendment to add the Deputy Gillette claim, and the parties disagree about the standard of review that we apply to this issue. Mungin argues that we review for abuse of discretion. The State argues that we must review this issue *de novo*. We agree with the State.

We have held that "[a]pplication of Rule 15(c) is reviewed for abuse of discretion." *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998) (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1409 n.6 (11th Cir. 1998)). But we need not "follow a prior panel's decision where an intervening Supreme Court decision establishes that the prior panel decision is wrong." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) (citing *United States v. Giltner*, 972 F.2d 1563, 1566 (11th Cir. 1992); *Lufkin v. McCallum*, 956 F.2d 1104, 1107 (11th Cir. 1992)). And, as relevant here, the Supreme Court held in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), that Federal Rule of Civil Procedure 15(c)(1) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Id.* at 553 (citing Fed. R. Civ. P. 15(c)(1)). The Court has thus plainly held that relation back under Rule 15(c)(1) turns on a legal question that is not left to the district court's discretion.

22-13616               Opinion of the Court               25

In light of *Krupski*, we agree with most of our sister circuits and conclude that we must decide relation back questions *de novo*.[2] Whether a claim relates back to a previous pleading is a quintessentially legal question. And we are in no worse position than district courts to perform this kind of legal analysis because it involves assessing whether the facts that could support a new claim were present in a timely pleading. Because it is necessary to give effect to *Krupski*, we adopt a *de novo* standard of review of the Rule 15(c)(1) relation back inquiry.

3.

Having settled the standard of review, we ask whether Mungin's allegation that his counsel should have investigated more

---

[2] *See ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (*de novo*); *United States v. Santarelli*, 929 F.3d 95, 100 (3d Cir. 2019) (same); *Robinson v. Clipse*, 602 F.3d 605, 607 (4th Cir. 2010) (same); *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374 (6th Cir. 2015) (same); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (same); *United States v. Roe*, 913 F.3d 1285, 1298 (10th Cir. 2019) (same); *United States v. Hicks*, 283 F.3d 380, 389 (D.C. Cir. 2002) (treating relation back under Rule 15(c) as a legal question); *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1367 (Fed. Cir. 2019) (*de novo*). *But see Turner v. United States*, 699 F.3d 578, 585 (1st Cir. 2012) (abuse of discretion); *United States v. Alaniz*, 5 F.4th 632, 635 n.2 (5th Cir. 2021) (collecting cases) (declining to decide this issue but noting that the Fifth Circuit has tended to use abuse of discretion review); *Coleman v. United States*, 79 F.4th 822, 827–29 (7th Cir. 2023) (abuse of discretion); *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (quoting *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010)) (abuse of discretion).

thoroughly, and presented the testimony of, George Brown relates back to his original timely petition. Mungin did not mention Brown in his original habeas petition. In his original habeas petition, there are also no other facts that could reasonably serve as the basis for an ineffective assistance of counsel claim related to Brown at all, let alone related to Brown at the guilt phase of trial. Thus, the original habeas petition does not provide a factual basis for relation back.

Mungin argues that his Brown claim is related to his original claim that his counsel committed ineffective assistance at the guilt phase of trial. We disagree. Although Claim I in Mungin's original petition is "Mr. Mungin Received Ineffective Assistance of Counsel at the Guilt Phase of his Capital Trial, in Violation of the Sixth Amendment to the United States Constitution," Dist. Ct. Doc. 1-2 at 28, that general claim does not mean that all new ineffective assistance of counsel claims relate back. The Supreme Court has held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. Accordingly, in the habeas context, a new ineffective assistance of counsel claim must relate to the specific facts underlying an already raised claim to "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). That is, the new claim must arise out of the conduct, transaction, or occurrence in the original petition—which cannot be viewed so broadly as to allow a claim that merely involves another issue related to representation at trial. *Cf.*

*Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) (conclud-ing that claims related back where the amendment sought "to add facts and specificity to the original claim[s]"). Applying these stand-ards, the Brown claim is not sufficiently related to the allegations in Mungin's initial habeas petition to relate back under Rule 15(c).

The district court's decision to allow Mungin to raise this claim through an amendment "does not establish the timeliness of the amended claim[]." *Watkins v. Stephenson*, 57 F.4th 576, 582 (6th Cir. 2023) (citing *Hill v. Mitchell*, 842 F.3d 910, 922–23 (6th Cir. 2016)). Because the Brown-related ineffective assistance of counsel claim was untimely under AEDPA's statute of limitations, the dis-trict court was correct to dismiss this claim with prejudice.

4.

Finally, we ask whether Mungin's ineffective assistance claim about Deputy Gillette relates back to his original petition. This claim is based on Mungin's argument that there is an incon-sistency between Deputy Gillette's trial testimony that he saw shell casings in the Dodge Monaco and the inventory storage receipt where he stated that he saw "nothing visible" in the car. *Mungin VI*, 320 So. 3d at 625.

The district court rejected Mungin's request to amend his petition to add this claim because, in part, it concluded that this claim was barred by the statute of limitations. Mungin argues that the district court should have allowed the amendment and, only afterward, addressed the timeliness or merits of the claim. We dis-agree. "Both the State and the victims of crime have an important

interest in the timely enforcement of a sentence." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). District courts may decide timeliness issues without pausing a federal case to allow untimely claims to be exhausted in state court. They are also under no obligation to allow habeas petitioners to raise new futile claims that are time barred. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Andrews*, 140 F.3d at 1409 n.7; *In re Engle Cases*, 767 F.3d 1082, 1122–23 (11th Cir. 2014); *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

The district court correctly held that Mungin's new claim does not relate back to his original petition. Mungin's original petition mentioned Deputy Gillette only in the context of his penalty-phase testimony. It did not raise any claims pertaining to his trial testimony that he saw shell casings inside the Dodge Monaco. Mungin's ineffective assistance of counsel claim involving Deputy Gillette, however, is based on the failure of Mungin's attorney to cross-examine Deputy Gillette about the shell casings in the guilt phase of the trial. Thus, the new ineffective assistance of counsel claim is based on actions related to testimony of a different type and from a different time than the testimony mentioned within Mungin's original petition.

Because the testimony underlying Mungin's new ineffective assistance of counsel claim is of a different type and from a different time than the testimony underlying the timely claims, it does not relate back. *See Mayle*, 545 U.S. at 650. Consequently, the Deputy

Gillette-related ineffective assistance of counsel claim is untimely and barred by AEDPA's statute of limitations.

### III.

We **AFFIRM** the district court's denial of Mungin's petition for a writ of habeas corpus.